**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BRENDA PERRIN,** | : | **Civil No. 4:12-CV-2099** |
| **on behalf of A.P.,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **vs.** | : | **(Judge Brann)** |
| | : | |
| **WARRIOR RUN SCHOOL** | : | **(Magistrate Judge Carlson)** |
| **DISTRICT,** | : | |
| | : | |
| **Defendant.** | : | |

**REPORT AND RECOMMENDATION**

## I.     Introduction

This case comes before the court on a motion filed by the defendant, Warrior Run School District (School District) seeking the dismissal of plaintiff, Brenda Perrin's, claim of discrimination brought under §504 of the Rehabilitation Services Act (RA), 29 U.S.C. §794.  Perrin brings this action on behalf of her daughter, A.P., seeking judicial review of the administrative decision denying her daughter special education services, in addition to allegations of a statutory discrimination claim under §504 of the RA.  For the reasons set forth below, it is recommended that the School District's motion to dismiss be denied.

## II.     Background and Procedural History

At all times relevant to this action, A.P. was a high school student in the Warrior Run School District.  In February and October 2010, while participating in

athletic, and unspecified "other activities" A.P sustained two serious head injuries; though exact nature of injuries is not entirely clear. During the beginning months of the 2010-2011 academic year A.P. was frequently absent from school after receiving a "series of new medical diagnoses from several specialists" and was on multiple occasions hospitalized in a psychiatric ward to receive necessary treatment. Following her injury A.P. experienced problems in school, which Perrin attributes to long-term symptoms of her injury. In December 2011 she began homebound instruction which continued until the end of the 2011-2012 school year.

In December 2011, Perrin submitted a written request to the school seeking an evaluation to determine whether A.P. was eligible for special education services under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §1400 *et seq.*, and services under §504 of the RA. In February of 2011, A.P. was evaluated by the School District, and deemed ineligible to receive special education services under the IDEA or services under the RA.

Following the School District's initial eligibility determination, Perrin requested an independent evaluation, which was approved and funded by the School District. On January 2012, an independent evaluator issued a report contradicting the School District's evaluation, and concluding that A.P. was eligible to receive special education services under the IDEA. After reviewing the

result of A.P.'s independent evaluation, the School District conducted a second evaluation of A.P. and concluded, once again, that she was not disabled, and was not eligible for special education services.

On March 20, 2012, Perrin filed a complaint for a special education due process hearing complaint alleging that A.P. was a disabled student entitled to special education services under the IDEA, and a services plan under §504 of the RA. Perrin's special education due process complaint also sought compensatory education under both IDEA and §504 of the RA. A special education due process hearing was held, and on June 23, 2012, the hearing officer issued a decision which found that A.P. was not eligible for special education services under the IDEA or §504 because her disability neither adversely affects her education nor has any substantial impact upon her ability to learn. The hearing officer also determined that A.P. was not entitled to compensatory education, because the School District did not violate the IDEA or §504 of the RA.

After the decision in the special education due process hearing, Perrin initiated this action on behalf of her daughter, A.P., by filing a complaint on October 21, 2012. (Doc. 1.) On February 15, 2013, the School District filed the instant motion to dismiss. (Doc. 8.) On April 17, 2013, Perrin filed an untimely response, (Doc. 10.), to which the School District filed a reply, (Doc. 11.). In their reply brief, the School District argues that because Perrin's brief in opposition was

submitted outside of the deadline to respond under Local Rule 7.6, their motion to dismiss should be deemed unopposed.

Local Rule 7.6 of the United State District Court for the Middle District of Pennsylvania provides as follows:

> Any party opposing any motion,…, shall file a brief in opposition within (14) days after service of the movant's brief… Any party who fails to comply with this rule shall be deemed not to oppose such motion.

Though typically, dismissal without a merits analysis is improper when based solely on noncompliance with L.R. 7.6, such a dismissal may be permitted where a court has issued an adequate warning, and when a litigant is represented by counsel. *See Stackhouse v. Mazurkiewicz,* 951 F.2d 29, 30 (3d Cir. 1991). In this case, although Perrin's brief in opposition was untimely, she did eventually file a brief in opposition. Furthermore, there is no basis to conclude that the thirty day delay in filing her brief in opposition in any way prejudiced the School District. Accordingly, the Court will consider Perrin's brief in opposition to the School District's motion to dismiss.

## III. <u>Discussion</u>

### A. <u>Motions to Dismiss and Pleading Standards</u>

In accordance with Fed.R.Civ.P. 12(b)(6), the court may dismiss a complaint for "failure to state a claim upon which relief can be granted." When reviewing a motion to dismiss, "[w]e must accept all factual allegations in the complaint as

true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010). In making that determination, we "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

"A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a)." *I.H. ex rel. D.S. v. Cumberland Valley Sch. Dist.*, 842 F. Supp. 2d 762, 769-70 (M.D.Pa. 2012). With respect to the benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), continuing with our opinion in *Phillips [v. County of Allegheny,* 515 F.3d 224, 230 (3d Cir.2008)], and culminating recently with the Supreme Court's decision in *Ashcroft v. Iqbal* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 209–10 (3d Cir. 2009).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677-78 (2009). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the plaintiff's claim is and of the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Detailed factual allegations are not required, but more is required than labels, conclusions, and a formulaic recitation of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler, supra*, 578 F.3d at 211. "A complaint has to "show" such an entitlement with its facts." *Id.*

In considering whether a complaint fails to state a claim upon which relief can be granted, the court must accept as true all well-pleaded factual allegations in the complaint, and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.,* 20 F.3d 1250, 1261 (3d Cir. 1994). A court, however, "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can

prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).

In conducting a review of the adequacy of a complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal, supra,* 556 U.S. at 679.

Thus, following *Twombly* and *Iqbal,* a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Santiago v. Warminster Tp.,* 629 F.3d 121, 130 (3d Cir. 2010)(quoting *Iqbal, supra,* 556 U.S. at 675 & 679).

**B.     The IDEA and §504 of the Rehabilitation Act**

This motion to dismiss requires us to consider the interplay between two statutes, the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §1400 *et seq.*, and §504 of the Rehabilitation Services Act (RA), 29 U.S.C. §794.

The IDEA requires states receiving federal education funding to provide every disabled child with a "free appropriate public education [(FAPE)]." 20 U.S.C. § 1412(a)(1).[1]   A FAPE "consists of educational instruction specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child 'to benefit' from the instruction." *Bd. Of Ed. Of the Hendrick Hudson Central School District v. Rowley,* 458 U.S. 176, 188–89, (1982).   Although a state is not required to maximize the potential of every handicapped child, it must supply an education that provides "significant learning" and "meaningful benefit" to the child.   *D.S. v. Bayonne Bd. Of Education,* 602 F.3d 553, 556 (3d Cir. 2010) (citing *Ridgewood Bd. of Educ. v. N.E.,* 172 F.3d 238, 247 (3d Cir.1999)).   "[T]he provision of merely more than a

_____

[1] "The term 'free appropriate public education' means special education and related services that—
   (A) have been provided at public expense, under public supervision and direction, and without charge;
   (B) meet the standards of the State educational agency;
   (C) include an appropriate preschool, elementary school, or secondary school education in the State involved; and
   (D) are provided in conformity with the individualized education program required under [20 U.S.C. § 1414(d) ]." 20 U.S.C. § 1401(9).

trivial educational benefit" is insufficient. *L.E. v. Ramsey Bd. of Educ.,* 435 F.3d 384, 390 (3d Cir. 2006) (internal marks and citations omitted). When a state is unable to provide a FAPE, the state must reimburse the child's parents for the costs of attendance at a private school that is able to provide a FAPE. *D.S.,* 602 F.3d at 557.

Section 504 of the Rehabilitation Act, in turn, provides that: "No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794 (a).

The IDEA and §504 of the RA address related concerns, employ similar statutory language, and in many respects provide nearly equivalent requirements. However, while the IDEA imposes an affirmative duty to provide educational opportunities to the disabled, the Rehabilitation Act prohibits discrimination against the disabled. *Swope v. Central York School Dist.*, 796 F.Supp.2d 592, 598 (M.D.Pa. 2011)(*citing Grieco v. New jersey Dept. of Edu.,* No. 2:06-CV-4077, 2007 WL 1876498 *4 (D.N.J. June 27, 2007)). "[A] plaintiff can prove an RA violation where (1) he is 'disabled' as defined by the Act; (2) he is 'otherwise qualified' to participate in school activities; (3) the school or the board of

education receives federal financial assistance; and (4) he was excluded from participation in, denied the benefits of, or subject to discrimination at, the school." *Andrew M. v. Delaware Cnty. Office of Mental Health and Mental Retardation,* 490 F.3d 337, 350 (3d Cir. 2007) (internal quotation and citation omitted).

In this case, the School District argues that Perrin's §504 discrimination claim should be dismissed for failure to state a claim upon which relief can be granted. Specifically the School District asserts that Perrin's complaint is devoid of "the most basic pleading requirements for a Section 504 discrimination claim," and lacks any allegations supporting the first and fourth elements of her §504 discrimination claim. At this stage of the proceedings, where we are limited to an assessment of the well-pleaded facts in the complaint, we believe that a Rehabilitation Act claim is adequately pleaded as to both of these contested elements.

**C.**  **Perrin adequately alleges that A.P. suffers from a qualifying disability for the purposes of §504 of the Rehabilitation Act**

To satisfy the first element of her disability discrimination case (i.e. show that A.P. has a disability for purposes of the RA), Perrin must demonstrate that A.P. has a record of having, or is regarded as having a physical or mental impairment that substantially limits one or more of her major life activities. 29 U.S.C. §705(20)(B). For purposes of the RA, a physical or mental impairment is defined as:

(A) any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive, digestive, genito-urinary; hemic and lymphatic; skin; and endocrine; or (B) any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.

34 C.F.R. §104.3(j)(2)(I). A major life activity is one that is "of central importance to daily life," *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 197 (2002), such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working, 29 C.F.R. §1630.2(I), or "sitting, standing, lifting [and] reaching." *Kralik v. Durbin*, 130 F.3d 76, 78-79 (3d Cir. 1997) (quoting C.F.R. §1630).

The School District argues that Perrin's complaint lacks any allegation that A.P. suffers from a disability as defined by the RA. Thus to set forth a plausible claim under §504 of the RA, Perrin must plead sufficient facts that would allow a reasonable trier of fact to conclude that A.P. suffers from a disability that affects a major life activity, in this case her ability to learn. Here, Perrin's complaint alleges that A.P. suffered multiple head injuries, she missed a significant amount of school as a result, and that at least one evaluator concluded that she was disabled. Thus, the factual averments in Perrin's complaint represent allegations with factual content to allow the court to make a reasonable inference that A.P. is disabled as defined by the RA.

11

**D.** **Perrin adequately alleges discrimination under §504 of the Rehabilitation Act**

The School District argues that in order to state a prima facie case under § 504 of the RA, Perrin must also allege that she was denied the benefits of the school based on her disability, and has failed to do so. In support of their argument the School District relies on a Third Circuit case, *Andrew M.*, which held in a specific factual context that allegations of a FAPE deprivation, without more, were insufficient to prove a claim of discrimination under §504 of the RA. *Andrew M.*, 490 F.3d at 349. For her part, Perrin responds, without elaboration, that her complaint does contain sufficient allegations of discrimination to support a claim under §504 of the RA. Perrin's approach to this issue of critical importance to this motion, however, is extraordinarily cryptic since the plaintiff does not discuss or address *Andrew M.* in any fashion in her brief. Therefore, the Court is left to its own devices in determining whether Perrin's allegation of a FAPE violation in this particular factual setting is sufficient to state a claim under §504 of the RA upon which relief may be granted.[2]

Left to our own devices, we conclude that *Andrew M*, which arose in a specific and significantly different factual context, is inapplicable here. *Andrew*

_____

[2]In the future, in order to avoid the peril of the Court being left to its own devices in ruling on matters that are crucial of the plaintiff's claims, plaintiff's counsel may wish to consider timely submission of briefs which respond directly to the legal authority cited by the opposing party.

*M.*, dealt with the question of whether the parents of two handicapped two-year-olds were entitled to attorney's fees under the RA. *Andrew M.*, 490 F.3d at 349-50. The Court ultimately determined that children under the age of three, covered by Part C of the IDEA, are by virtue of their pre-school age not entitled to a FAPE under §1412, and because they are not entitled to a FAPE, such a deprivation does not equate to a violation of §504 of the RA. *Id.* at 350; *see also*, 20 U.S.C. §1412(a)(1)(A).

Yet while reaching this conclusion on the narrow facts of this case, the Court in *Andrew M.* emphasized that for many school age children:

> [I]t is clear why violations of Part B of the IDEA are almost always violations of the RA. Under § 612 of the IDEA, states accepting federal funds must provide children of a certain age a free and appropriate public education. 20 U.S.C. § 1412. The regulations accompanying the RA adopt this requirement and provide that a handicapped person is one 'to whom a state is required to provide a free appropriate public education under section 612....' 34 C.F.R. § 104.3(l). Therefore, when a state fails to provide a disabled child with a free and appropriate education, it violates the IDEA. However, it also violates the RA because it is denying a disabled child a guaranteed education merely because of the child's disability.

*Andrew M. v. Delaware Cnty. Office of Mental Health & Mental Retardation,* 490 F.3d 337, 350 (3d Cir. 2007).

In this case, the plaintiff, unlike the children in *Andrew M.*, is a school aged child covered by Part B of the IDEA. As a school aged child, A.P. has a statutory entitlement to a FAPE, a material fact which plays a material role in the resolution

of this motion. Under §1412 of the IDEA, any state accepting federal funds must provide children between the ages of three and twenty-one with a FAPE. 20 U.S.C. §1412(a)(1)(A). A "qualified handicapped person" under §504 of the RA is defined as anyone "to whom a state is required to provide a free appropriate public education under [the IDEA]." 34 C.F.R. §104.3(l)(2)(iii). In analyzing this issue, this Court has reasoned consistent with the teachings of *Andrew M* that:

> [W]hen a state fails to provide a [qualified] disabled child with a free and appropriate education, it violates the IDEA. However, it also violates the [Rehabilitation Act] because it is denying a disabled child a guaranteed education merely because of the child's disability. It is the denial of an education that is guaranteed to all children that forms the basis of the claim.

*J.C. v. Lakeland School District*, No. 3:10-CV-1779, 2011 WL 1327439 *5 (M.D.Pa. April 5, 2011) (*quoting Andrew M.*, 490 F.3d at 350). Therefore, the denial of a FAPE to an otherwise "qualified disabled child" under §1412 of the IDEA may also constitute discrimination against that child because of the child's disability in violation of §504. *J.C.,* 2011 WL 1327439 *5 (M.D. Pa. April 5, 2011); *see also N.E. ex. Rel. M.E.*, 172 F.3d 238, 253 (3d Cir. 1999) ("the failure to provide a free appropriate public education violates IDEA and therefore could violate § 504"); *W.B. v. Matula,*, 67 F.3d 484, 492-93 (3d Cir. 1995)(*abrogated on other grounds by A.W. v. Jersey City Public Schools,* 486 F.3d 791 (3d Cir. 2007) (stating that IDEA and § 504 impose nearly identical duties and noting that § 504's implementing regulations require that schools provide a 'free appropriate public

education').");  *Lauren G. ex rel. Scott G. v. W. Chester Area Sch. Dist.*, 906 F. Supp. 2d 375, 388 (E.D. Pa. 2012);  *N.P. v. E. Orange Bd. of Educ.*, CIV. 06-5130 DRD, 2011 WL 463037 (D.N.J. Feb. 3, 2011) ;  *D.G. v. Somerset Hills Sch. Dist.*, 559 F. Supp. 2d 484, 496 (D.N.J. 2008);  *see also L.T. v. Mansfield Twp. School Dist.*, No. 04CV1381, 2007 WL 2332308, *2–5 (D.N.J. 2007) (explaining that *Andrew M.* does not require a plaintiff under the Rehabilitation Act to prove discrimination because of his disability beyond proving a violation of Part B of the IDEA); *Andrew M.*, 490 F.3d at 349-50 (noting that while not a *per se* violation, it is clear why violations of Part B of the IDEA are almost always violations of the RA).

We recognize, of course, that, while these well-pleaded events regarding the denial of a FAPE can serve to support claims under both the IDEA and the RA, the ultimate elements of proof as to these two claims differ significantly. An RA violation requires proof of discrimination, and the defendant aptly notes that the RA does reach merely negligent conduct.  *L.T. v. Mansfield Twp. Sch. Dist.*, CIV A 04-1381 NLH, 2007 WL 2332308 (D.N.J. Aug. 10, 2007).  However, at this stage of the litigation, where we are limited to an assessment of the pleadings, we find that Perrin's complaint sufficiently alleges:  (1) that A.P. is a student between the ages of three and twenty-one; (2) that after conducting an evaluation at least one qualified professional opined that she was eligible for special education

services under the IDEA; and (3) that A.P. was ultimately denied special education services. Insofar as Perrin alleges that she was entitled to special education services, the denial of which allegedly violates her right to FAPE, she has set forth sufficient allegations that may permit a reasonable inference on the pleadings that she has suffered some discrimination. The question of whether Perrin can actually prove what she alleges must await another day, and another motion in the nature of a summary judgment motion.

## IV. Recommendation

For the foregoing reasons, IT IS RECOMMENDED that the School District's motion to dismiss Perrin's claim brought under §504 of the Rehabilitation Act be DENIED.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record

developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 22nd day of July 2013.

**_S/Martin C. Carlson_**
Martin C. Carlson
United States Magistrate Judge